UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LACEE M. LEES,                                    )
                                                  )   CASE NO. C13-1663-RSL-MAT
      Plaintiff,                            )
                                                  )
      v.                                    )   REPORT AND RECOMMENDATION
                                                  )   RE: SOCIAL SECURITY DISABILITY
CAROLYN W. COLVIN, Acting                         )   APPEAL
Commissioner of Social Security,                  )
                                                  )
      Defendant.                            )
_____          )

      Plaintiff Lacee M. Lees proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner).   The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative record (AR), and all memoranda, the Court recommends this matter be AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

      Plaintiff was born on XXXX, 1971.[1]  She has an Associate's Degree, has taken other college-level classes, and is certified to work as a nursing assistant.  (AR 36-40, 43, 57-58.)

---

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -1

01 Plaintiff previously worked as a nursing assistant.   (AR 43-44, 58.)

02      Plaintiff filed her SSI application with a protective filing date in December 2011,

03 alleging disability since January 1, 2007.   (AR 160-63.)   Her application was denied initially

04 and on reconsideration, and she timely requested a hearing.   ALJ Kimberly Boyce held a

05 hearing on December 3, 2012, taking testimony from plaintiff and a vocational expert. (AR

06 29-63.)   On January 7, 2013, the ALJ found plaintiff not disabled.   (AR 12-24.)

07      Plaintiff timely appealed.   The Appeals Council denied review on July 11, 2013 (AR

08 1-5), making the ALJ's decision the final decision of the Commissioner.   Plaintiff appealed

09 this final decision of the Commissioner to this Court.

10                                    **JURISDICTION**

11      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

12                                     **DISCUSSION**

13      The Commissioner follows a five-step sequential evaluation process for determining

14 whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

15 must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

16 not engaged in substantial gainful activity since the December 2011 application date.   *See* 20

17 C.F.R. § 416.335 (earliest month SSI payments can begin is the month following the month in

18 which the application was filed).   At step two, it must be determined whether a claimant

19 suffers from a severe impairment.   The ALJ found plaintiff's depression, anxiety, and

20 substance addiction severe.   Step three asks whether a claimant's impairments meet or equal a

21 listed impairment.   The ALJ found plaintiff's impairments did not meet or equal the criteria of

22 a listed impairment.

REPORT AND RECOMMENDATION
PAGE -2

01        If a claimant's impairments do not meet or equal a listing, the Commissioner must

02   assess residual functional capacity (RFC) and determine at step four whether the claimant has

03   demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

04   to perform a full range of work at all exertional levels, except that, in order to persist through an

05   ordinary work schedule and employer production expectations and remain within customary

06   employer rules regarding attendance, plaintiff could understand, remember, and carry out work

07   that is unskilled, routine, and repetitive, permits a variable pace through a shift to complete the

08   assigned work by the end of each shift, and has no more than occasional work setting change.

09   With this RFC, the ALJ found plaintiff unable to perform past relevant work.

10        If a claimant demonstrates an inability to perform past relevant work or has no past

11   relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

12   claimant retains the capacity to make an adjustment to work that exists in significant levels in

13   the national economy.   The ALJ concluded plaintiff could perform other jobs existing in

14   significant levels in the national economy, such as work as a housekeeping cleaner and

15   industrial cleaner.   The ALJ, therefore, concluded plaintiff was not disabled at any time from

16   the application date through the date of the decision.

17        This Court's review of the final decision is limited to whether the decision is in

18   accordance with the law and the findings supported by substantial evidence in the record as a

19   whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

20   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

21   reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

22   F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

REPORT AND RECOMMENDATION
PAGE -3

01 supports the final decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

02 F.3d 947, 954 (9th Cir. 2002).

03      Plaintiff argues the ALJ erred in evaluating medical opinions and her credibility,

04 resulting in error at steps four and five.  She requests remand for an award of benefits.  The

05 Commissioner maintains the ALJ's decision has the support of substantial evidence and should

06 be affirmed.

07                                    Medical Opinions

08      In general, more weight should be given to the opinion of a treating physician than to a

09 non-treating physician, and more weight to the opinion of an examining physician than to a

10 non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where, as in

11 this case, the opinions of examining physicians are contradicted by other opinion evidence,

12 such opinions may not be rejected without "'specific and legitimate reasons' supported by

13 substantial evidence in the record for so doing."  *Id*. at 830-31 (quoting *Murray v. Heckler*, 722

14 F.2d 499, 502 (9th Cir. 1983)).

15 A.    Dr. Robert Parker

16      Dr. Robert Parker examined plaintiff on behalf of the Washington State Department of

17 Social and Health Services (DSHS) in December 2010 (AR 228-35), August 2011 (AR

18 236-45), and July 2012 (AR 432-45).   The ALJ gave these opinions little weight.   (AR 20-21.)

19      In 2012, Dr. Parker assessed plaintiff with a global assessment of functioning (GAF)

20 score 35,[2] and opined she "appears to have minimal ability to handle daily activities beyond

21

22           2 According to an earlier version of the Diagnostic and Statistical Manual of Mental Disorders
(DSM), a GAF of 35 indicates "some impairment in reality testing or communication" or "major

REPORT AND RECOMMENDATION
PAGE -4

01    basic survival needs." (AR 432-34.) The ALJ found this opinion inconsistent with the

02    record, which showed "a fairly active range of activities," including "performing household

03    chores, watching television, shopping with her friend, and going to the library to read and use

04    the computer." (AR 20.) The ALJ also found Dr. Parker's opinion that plaintiff had

05    problems initiating and completing tasks inconsistent with examination findings showing she is

06    able to follow three-step commands and recall words immediately and after a delay. (AR

07    20-21 (citing AR 433, 435).) She had previously described the examination results from Dr.

08    Parker and others as reflecting generally unremarkable objective findings. (AR 17-18

09    (describing Dr. Parker's testing results and observations, including, *inter alia*, her "almost

10    perfect" mental status examination (MSE) score of 29 out of 30 in 2010, and her ability to

11    follow three-step commands and recall digits forwards and backwards).)

12         The ALJ stated Dr. Parker's 2010 and 2011 assessments "similarly opined very

13    restricted functioning that is inconsistent with the overall record." (AR 21.) In 2011, Dr.

14    Parker assessed a GAF of 35, moderate limitations in following simple or complex instructions,

15    marked limitations in the ability to learn new tasks, and severe limitations in performing routine

16    tasks without undue supervision, working with public contact or limited public contact, and

17    maintaining appropriate behavior in a work setting. (AR 237-38.) In 2010, Dr. Parker

18

---

19    impairment in several areas, such as work or school family relations, judgment, thinking or mood."
       DSM-IV-TR 34 (4th ed. 2000). The most recent version of the DSM does not include a GAF rating for
20    assessment of mental disorders. DSM-V at 16-17 (5th ed. 2013). While the Social Security
       Administration continues to receive and consider GAF scores from "acceptable medical sources" as
21    opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function,
       and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not
22    provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.
       Administrative Message 13066 ("AM-13066").

REPORT AND RECOMMENDATION
PAGE -5

01  assessed a GAF of 45,[3] mild limitations with simple instructions, moderate limitations with

02  complex instructions, and marked limitations in performing routine tasks without undue

03  supervision, working with public contact or limited public contact, and maintaining appropriate

04  behavior.  (AR 229-30.)  The ALJ found the assessed limitations unsupported by the

05  examination findings.  She contrasted the severe limitations in social functioning with Dr.

06  Parker's report that plaintiff was alert, clean appearing, responsive, and cooperative (AR 21

07  (citing AR 242)), and the marked and severe limitations in cognitive functioning with Dr.

08  Parker's report that plaintiff was able to recall three out of three words immediately, recall two

09  out of three words after a delay, exhibited good concentration, and followed the flow of

10  conversation and a three-step command.  (*Id.* (citing AR 243).)  The ALJ found "[s]uch

11  significant inconsistencies" to undermine the persuasiveness of the opined limitations.  (*Id.*)

12      Plaintiff asserts error in the absence of an explanation as to how her ability to engage in

13  the activities identified by the ALJ was inconsistent with opinions as to her limitations in a

14  work setting.  She avers the ALJ failed to take into account the worsening of her symptoms,

15  and maintains Dr. Parker's opinions were consistent with her contemporaneous levels of

16  functioning when assessed.  (*See*, *e.g.*, AR 433 (Dr. Parker, in 2012, noted plaintiff's report

17  that she spent her day in pajamas, watched television, went to the methadone clinic daily by

18  bus, showered twice a week, and had purposefully overdosed on benzodiazepines in September

19  2011), AR 386 (in April 2012, plaintiff reported a lot of depression and anxiety, and was not

20  planning on returning to school), and AR 528 (in June 2012, plaintiff relapsed on

21  

22      3 A GAF of 45 reflects "serious symptoms" or "any serious impairment in social, occupational, or school functioning."  DSM-IV-TR at 34.

REPORT AND RECOMMENDATION
PAGE -6

01   benzodiazepines when taking care of her uncle).)   She also points to her "difficulty" attending

02   counseling related to her methadone program.   (Dkt. 22 at 8, citing AR 513-34.)

03   Plaintiff maintains the ALJ overstepped her authority and expertise, and failed to

04   provide an adequate explanation, in deeming the opinions of Dr. Parker inconsistent with his

05   own examination results.   She distinguishes the evidence of her ability to perform tasks in a

06   clinical setting from Dr. Parker's professional assessment of her ability to function in a work

07   setting, as based on his own observations and testing results.   She notes the ALJ's failure to

08   acknowledge other observations of Dr. Parker, such as that she was both lethargic and restless,

09   with slowed ambulation, as well as tearful, uncomfortable, and passive.   (AR 434.)   She also

10   avers the ALJ's failure to address Dr. Parker's opinion that she would have slow performance

11   and stress tolerance.   (AR 433.)   Plaintiff maintains the ALJ's "alternate interpretation" of the

12   significance of the MSE findings and other observations of Dr. Parker does not suffice as a

13   legally sufficient basis to reject his opinions.   (Dkt. 22 at 11.)

14   "[T]he ALJ is responsible for determining credibility, resolving conflicts in medical

15   testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

16   1998) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). *Accord Carmickle v.*

17   *Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Thomas*, 278 F.3d at 956-57.   The ALJ

18   must support her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 722 (citing

19   *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).   When evidence reasonably supports

20   either confirming or reversing the ALJ's decision, we may not substitute our judgment for that

21   of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).   Stated another way:

22   "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's

REPORT AND RECOMMENDATION
PAGE -7

01 conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th

02 Cir. 1999) (citing *Andrews*, 53 F.3d at 1041).

03       An ALJ properly considers inconsistency between a physician's opinion and evidence

04 of a claimant's activities. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming

05 rejection of treating physician's opinion inconsistent with the claimant's level of activity).   In

06 this case, the ALJ reasonably contrasted Dr. Parker's opinion that plaintiff had minimal ability

07 to handle activities "beyond basic survival means" (AR 434), with evidence of her activities.

08 Those activities included not only her ability to perform household chores, watch television,

09 shop with a friend, and go to the library to read and use a computer, but also, *inter alia*, her

10 ability to care for her cats, go outside three to four times daily and utilize public transportation,

11 her admission she had no problems getting along with family, friends, neighbors, or others, the

12 fact that she attended classes and performed well academically when she was able to attend, that

13 she managed her own finances, including paying bills, counting change, and using money

14 orders, that she reads, and that she takes daily walks lasting forty to forty-five minutes.   (AR

15 19.)   While plaintiff's interpretation may differ, she fails to demonstrate the ALJ unreasonably

16 interpreted the evidence as inconsistent with the opinions of Dr. Parker.

17       Nor does plaintiff demonstrate error by pointing to a worsening of her symptoms or by

18 focusing on only later-dated treatment records or reports.   The ALJ's consideration of

19 plaintiff's activities included records and reports dated in late 2011 and in 2012.   (*See*, *e.g.*, AR

20 173-80 (in November 2011, plaintiff reported taking the bus to her methadone clinic six days a

21 week, caring for her cat, going to school, performing cleaning and laundry, going out three to

22 four times daily, shopping once weekly, and the ability to care for her finances, read, and get

REPORT AND RECOMMENDATION
PAGE -8

01  along with others) and AR 265 (in February 2012, plaintiff reported she "walks about 40 to 50

02  minutes a day and, while she had to drop a couple of courses, she attended classes two days a

03  week).)  Also, while plaintiff points to an April 2012 report that she was not returning to

04  school, that document reflects she was not returning "because she can't get enough money to

05  live on and go to school."  (AR 386.)   It also notes her report she was going to a work source

06  center to complete a resume, was continuing to get out daily to get her methadone, and was

07  "hoping to see her grandmother[r]" that weekend.  (*Id*.)  Also, while plaintiff interprets the

08  records relating to her methadone program as evidence of her "difficulty" attending counseling,

09  the ALJ reasonably construed this and other evidence as reflecting a failure to follow prescribed

10  treatment, and her noncompliance with treatment as exacerbating any waxing and waning of

11  her symptoms.   (AR 18-19.)

12      An ALJ may also reject a physician's opinion due to a discrepancy or contradiction

13  between the opinion and the physician's own notes or observations.  *Bayliss v. Barnhart*, 427

14  F.3d 1211, 1216 (9th Cir. 2005).  *See also Morgan*, 169 F.3d at 603 (ALJ appropriately

15  considers internal inconsistencies within and between physicians' reports).   In this case, the

16  ALJ reasonably construed Dr. Parker's opinions as to the degree of plaintiff's limitations

17  inconsistent with his own findings on examination, including, for example, inconsistency

18  between the opinion that plaintiff would have difficulty with task completion and plaintiff's

19  demonstrated ability on examination to follow commands and complete tasks.  (AR 20-21.)

20  (*See also* AR 436 (testing on "Trails A & B" suggested "No impairment of the ability to follow

21  instructions and perform a complex cognitive task."; observing: "Client proceeded attentively

22  and smoothly during this task."))   While the ALJ did not describe all of Dr. Parker's

REPORT AND RECOMMENDATION
PAGE -9

01 observations, plaintiff fails to demonstrate the ALJ's interpretation of the evidence as a whole

02 was not rational.   Also, while plaintiff maintains the ALJ failed to address Dr. Parker's

03 opinions as to slow performance and stress tolerance, the ALJ appears to have reasonably

04 construed those statements as related to the opinion regarding task initiation and completion.

05 (*See* AR 433 ("Problems initiating/completing tasks, slow performance, poor stress tolerance

06 (severe), poor coping (severe).") )

07       The ALJ, in sum, provided specific and legitimate reasons for assigning little weight to

08 the opinions of Dr. Parker.   The Court, as such, finds no error.

09 B.    Dr. Barbara Lui

10       Dr. Barbara Lui examined plaintiff and completed a DSHS evaluation form in January

11 2010.  (AR 406-12.)  Dr. Lui assessed a GAF of 40[4] and marked limitations in plaintiff's

12 ability to follow simple instructions, learn new tasks, relate appropriately to coworkers and

13 supervisors, and to tolerate the pressures and expectations of a work setting.  (AR 409-10.)

14 (*But see* AR 410 (assessing only moderate limitations in relation to complex instructions, the

15 ability to exercise judgment and make decisions, to perform routine tasks, to interact

16 appropriately in public contacts, and maintain appropriate behavior in a work setting).)

17       The ALJ gave little weight to the opinions of Dr. Lui.   She observed that Dr. Lui did

18 not provide persuasive or detailed explanations supporting the marked limitations assessed,

19 noting that, in relation to simple instructions, "Dr. Lui merely explained that the claimant

20 '[b]ecomes frustrated when she cannot focus and remember things.'"  (AR 21 (citing AR

21

22       4 A GAF of 40 reflects some impairment in reality testing or communication or major
impairment in several areas.   DSM-IV-TR 34

REPORT AND RECOMMENDATION
PAGE -10

01    410).)   The ALJ found this explanation based on plaintiff's self-reported symptoms and

02    "wholly inconsistent with the examination findings showing [she] is able to perform three-step

03    commands."   (AR 21.)   The ALJ also found Dr. Lui's explanation for the marked limitation in

04    the ability to learn new tasks – plaintiff's "'[d]epressed emotional state affects concentration

05    and motivation'" – based on plaintiff's self-reported symptoms and "inconsistent with the

06    generally unremarkable" MSE findings previously described in the decision.   (*Id*.)

07         Plaintiff raises the same general objections to the ALJ's perception of an inconsistency

08    between the opinions of Dr. Lui and her examination results as raised in relation to Dr. Parker,

09    asserting the ALJ overstepped her authority, failed to explain her reasoning, and ignored

10    various aspects of the report from this physician, as well as taking issue with the ALJ's

11    "alternate interpretation" of the evidence.   Again, however, the Court finds no error.

12         "The ALJ need not accept the opinion of any physician, including a treating physician,

13    if that opinion is brief, conclusory, and inadequately supported by clinical findings."   *Thomas*,

14    278 F.3d at 957.   An ALJ may also, as stated above, properly reject a physician's opinions as

15    inconsistent with that physician's own findings on examination, *see Bayliss*, 427 F.3d at 1216,

16    as well as where a physician's opinions are "based 'to a large extent' on a claimant's

17    self-reports that have been properly discounted as incredible."   *Tommasetti v. Astrue*, 533 F.3d

18    1035, 1041 (9th Cir. 2008) (quoting *Morgan*, 169 F.3d 595, 602 (9th Cir. 1999)).

19         In this case, the ALJ reasonably pointed to the absence of persuasive or detailed

20    explanations for the opinions of marked limitations assessed by Dr. Lui, providing specific

21    examples in support of her conclusion.   (*See* AR 21, 410.)   The ALJ further reasonably

22    construed the evaluation as reflecting Dr. Lui's reliance on plaintiff's self-reported symptoms,

REPORT AND RECOMMENDATION
PAGE -11

01 which the ALJ found not fully credible.  Finally, the ALJ also reasonably construed the

02 opinions as to marked limitations inconsistent with the generally unremarkable MSE findings

03 in the record.  (*See* AR 17-18 (describing, in addition to the MSE results from Dr. Parker, Dr.

04 Lewis's observations that plaintiff was oriented, cooperative, and logical, was able to perform

05 serial threes and serial sevens, and able to spell "phone" forward and backward, and Dr. Lui's

06 report that plaintiff exhibited no evidence of disturbance to perception or thought process,

07 "adding only that '[h]er anxious mood overshadowed her ability to concentrate and focus'").)

08       Plaintiff, at best, sets forth an alternative interpretation of the evidence.  Because she

09 fails to demonstrate the ALJ's interpretation of that evidence was not equally rational, she fails

10 to undermine the substantial evidence support for the ALJ's decision.

11 C.    <u>Dr. Janis Lewis</u>

12       Dr. Janis Lewis examined plaintiff and completed a DSHS evaluation form in February

13 2009.  (AR 398-404.)   As observed by the ALJ, Dr. Lewis found no limitations in plaintiff's

14 ability to perform simple tasks, mild limitations with complex tasks, and moderate to marked

15 limitations in social functioning.  (AR 400.)   The ALJ found the assessed limitations

16 inconsistent with the record, particularly plaintiff's range of functioning.  (AR 22.)   She also

17 found the limitations "of less probative value in this case because they were provided more than

18 two years [before] the amended alleged onset date of disability."  (AR 22.)   The ALJ,

19 therefore, assigned the opinions "only some weight."  (*Id.*)

20       Plaintiff notes Dr. Lewis evaluated her shortly after she stopped abusing pain-killers.

21 (AR 400.)   She describes Dr. Lewis as noting traits later examiners and providers mentioned,

22 such as social avoidance, anger, and irritability.  (*See* AR 337, 400, 404.)   Plaintiff maintains

01   an absence of evidence of activities concurrent with Dr. Lewis's report that would undermine

02   her findings, and error in the ALJ's reliance on a 2012 function report as a basis for rejecting

03   Dr. Lewis's 2009 evaluation.   Plaintiff also contends the ALJ's decision is misleading as to the

04   reason for the amendment of the onset date, noting it was changed only because she was entitled

05   to SSI benefits only after the date of her application, 20 C.F.R. §§ 416.305, 416.330, not

06   because she was not disabled at an earlier date.

07         The Court finds no error established.   It should first be noted that the ALJ rejected only

08   a portion of the opinions of Dr. Lewis, as there is no conflict between the opinions of this

09   physician as to plaintiff's cognitive abilities and the RFC assessment of her ability to perform

10   unskilled, routine repetitive work, permitting a variable pace and no more than occasional work

11   setting change.   (AR 20, 22, 400.)   Also, while the ALJ did rely on evidence of plaintiff's

12   activities during the relevant time period in finding conflict with the opinion evidence, she also

13   pointed to earlier evidence, including plaintiff's reports to Dr. Lewis that she went to the library

14   twice weekly, reads, watches television, and uses the computer at the library, as well as reports

15   she made to Dr. Parker in December 2010.   (AR 19 (citing AR 233, 404).)   Plaintiff, as such,

16   fails to demonstrate error in the ALJ's finding of inconsistency between the opinions of Dr.

17   Lewis and the evidence of her activities.   *Rollins*, 261 F.3d at 856.

18         Plaintiff further fails to demonstrate error in the ALJ's observation that Dr. Lewis

19   rendered her opinions more than two years before the amended alleged onset date.   The ALJ

20   noted at the beginning of the decision that, although SSI is not payable prior to the month

21   following the month in which the application is filed, she considered the complete medical

22   history in reaching her decision.   (AR 12.)   The ALJ thereafter proceeded to not only consider

REPORT AND RECOMMENDATION
PAGE -13

01  the evidence from Dr. Lewis, but to assign the opinions of that physician some weight.   (AR

02  22.)   That the ALJ found the opinions of Dr. Lewis to have less probative value than more

03  recent evidence, given the fact that they pre-dated the time period under consideration for an

04  award of disability benefits by more than two years, was entirely reasonable.   For this reason,

05  and for the reasons stated above, the ALJ's consideration of the opinion evidence from Dr.

06  Lewis should not be disturbed.

07  D.       Reviewing Physicians

08         Plaintiff takes issue with the ALJ's consideration of the opinion evidence from

09  reviewing State agency psychological consultants.   Dr. James Bailey, in April 2012, opined

10  plaintiff's mental health symptoms would reduce her concentration, persistence, and pace and

11  ability to sustain a regular work routine, but that she is capable of completing both simple and

12  complex instructions.   (AR 71.)   He found no significant social limitations, opining plaintiff

13  could have routine public contact.   (*Id*.)   Dr. Michael Brown, in May 2012, concurred with

14  Dr. Bailey, and added that, while plaintiff would occasionally have difficulty adapting to

15  changes in the work setting, she would nonetheless be able to do so within normal tolerances of

16  a competitive work environment.   (AR 83.)

17         The ALJ found the opinions of Drs. Bailey and Brown generally consistent with the

18  evidence of record, including MSE findings indicating plaintiff performed well in

19  concentration testing, such as digit span forward and backward tests, counting backwards,

20  spelling "world" forward and backward, and following a three-step command.   (AR 20 (citing

21  AR 435 (Dr. Parker's July 2012 MSE results)).)   The ALJ also found the opinions consistent

22  with plaintiff's fairly active range of daily activities.   (*Id*.)   Due to the consistencies with the

01    overall record, the ALJ accorded significant weight to their opinions.   (*Id.*)

02           Plaintiff notes that a contradictory opinion of a "nonexamining physician cannot by

03    itself constitute substantial evidence that justifies the rejection of the opinion of either an

04    examining physician or a treating physician."   *Lester*, 81 F.3d at 831.   She observes that Drs.

05    Bailey and Brown only had the opportunity to address Dr. Parker's 2010 and 2011 evaluations,

06    and did not mention the evaluations by Drs. Lui and Lewis.   *Cf.* Social Security Ruling (SSR)

07    96-6p ("In appropriate circumstances, opinions from State agency [consultants] may be entitled

08    to greater weight than the opinions of treating or examining sources. For example, the opinion

09    of a State agency [consultant] may be entitled to greater weight than a treating source's medical

10    opinion if the State . . . consultant's opinion is based on a review of a complete case record that

11    includes a medical report from a specialist in the individual's particular impairment which

12    provides more detailed and comprehensive information than what was available to the

13    individual's treating source.")   She maintains the State agency consultants simply disagreed

14    with Dr. Parker without giving any evidentiary basis to support their conclusion, and argues the

15    consistency of the examining physician opinions undermines the weight assigned to the

16    opinions of the non-examining sources.

17           The ALJ did not, in this case, simply rely on the opinions of the non-examining

18    physicians to reject the opinions of the examining physicians.   As discussed above, the ALJ

19    provided specific and legitimate reasons for rejecting the opinions of the examining physicians.

20           Nor does plaintiff otherwise demonstrate error in the reliance on the opinions of Drs.

21    Bailey and Brown.   As State agency medical consultants, they are "highly qualified" and

22    "experts in Social Security disability evaluation."   20 C.F.R. §§ 404.1527(e)(2)(i),

REPORT AND RECOMMENDATION
PAGE -15

01  416.927(e)(2)(i); SSR 96-6p.   Contrary to plaintiff's contention that their expertise is of

02  relevance in only limited circumstances, such as determinations at step three, State agency

03  consultants "consider the medical evidence in disability cases and make findings of fact on the

04  medical issues, including, but not limited to, the existence and severity of an individual's

05  impairment(s), the existence and severity of an individual's symptoms, whether the

06  individual's impairment(s) meets or is equivalent in severity to the requirements for any [listed]

07  impairment . . . , and the individual's [RFC]."   SSR 96-6p.   Moreover, while Drs. Bailey and

08  Brown may not have reviewed all of the examining physician reports, they did, unlike some or

09  all of the examining physicians, review plaintiff's treatment records.   (AR 68, 79.)

10          Moreover, "the report of a nonexamining, nontreating physician need not be discounted

11  when it 'is not contradicted by *all other evidence* in the record.'"   *Andrews*, 53 F.3d at 1041

12  (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original)).   Here, the opinions of Drs.

13  Bailey and Brown were not contradicted by all other evidence in the record.   Instead, as

14  described by the ALJ, the record included, for example, numerous MSEs showing minimal

15  remarkable or generally unremarkable findings failing to corroborate plaintiff's allegations of

16  debilitating mental symptoms.   (AR 18-19.)   The record also contained at least portions of

17  medical opinions from the examining physicians that contradicted plaintiff's allegations as to

18  the extent of her limitations and corresponded with the assessed RFC.   For example, Drs.

19  Parker and Lewis opined as to no more than mild to moderate limitations in plaintiff's ability to

20  understand, remember, and persist in relation to simple and complex instructions (AR 230, 238,

21  400), Dr. Lewis opined as to no more than moderate limitations in relation to any other

22  cognitive factors (AR 400), and Drs. Lewis and Lui opined as to only moderate limitations in

REPORT AND RECOMMENDATION
PAGE -16

01 public contacts (AR 400, 410).   Considering this evidence, and the record as a whole, the ALJ

02 reasonably assigned significant weight to the opinions of Drs. Bailey and Brown.

03 <u>Credibility</u>

04      Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

05 reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

06 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*,

07 260 F.3d 1044, 1049 (9th Cir. 2001).   "General findings are insufficient; rather, the ALJ must

08 identify what testimony is not credible and what evidence undermines the claimant's

09 complaints."  *Lester*, 81 F.3d at 834.  "In weighing a claimant's credibility, the ALJ may

10 consider his reputation for truthfulness, inconsistencies either in his testimony or between his

11 testimony and his conduct, his daily activities, his work record, and testimony from physicians

12 and third parties concerning the nature, severity, and effect of the symptoms of which he

13 complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

14      In this case, the ALJ found that, while plaintiff's medically determinable impairments

15 could reasonably be expected to cause some of the alleged symptoms, her statements

16 concerning the intensity, persistence, and limiting effects of those symptoms were not entirely

17 consistent with the evidence of record.   Contrary to plaintiff's contention, the ALJ provided a

18 number of clear and convincing reasons in support of that conclusion.

19 A.    <u>Medical Evidence</u>

20      "Contradiction with the medical record is a sufficient basis for rejecting the claimant's

21 subjective testimony."   *Carmickle*, 533 F.3d at 1161.   Also, "[w]hile subjective pain

22 testimony cannot be rejected on the sole ground that it is not fully corroborated by objective

REPORT AND RECOMMENDATION
PAGE -17

01  medical evidence, the medical evidence is still a relevant factor in determining the severity of

02  the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857; SSR 96-7p.   The ALJ

03  here found plaintiff's allegations as to the degree of her symptoms inconsistent with, and not

04  corroborated by, the results of numerous MSEs.   (AR 17-18.)   While plaintiff accurately notes

05  that the ALJ did not describe all of the examination results and observations of the physicians,

06  she fails to demonstrate the ALJ's interpretation of the evidence as contradicting her testimony

07  as to the extent of her limitations and as supporting the assessed RFC was not rational.

08  B.   <u>Minimal Treatment History and Failure to Follow Prescribed Treatment</u>

09        An ALJ appropriately considers evidence of minimal or conservative treatment in

10  assessing a claimant's credibility.   *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007);

11  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).   An ALJ also appropriately considers an

12  unexplained or inadequately explained failure to seek treatment or follow a prescribed course of

13  treatment.   *Tommasetti*, 533 F.3d at 1039.

14        In this case, the ALJ found plaintiff's "generally minimal treatment history and failure

15  to follow prescribed treatment [to] raise additional credibility concerns about the alleged

16  severity of mental symptoms."   (AR 18.)   She pointed to plaintiff's testimony that "she quit

17  prescribed and monitored methadone treatment and takes benzodiazepines that she gets from a

18  friend."   (*Id*.)   The ALJ stated that "[t]reatment records that do exist show minimal findings."

19  (*Id*.)   She described a November 2011 evaluation in which plaintiff complained of depressive

20  symptoms and difficulty concentrating, with an examination revealing she had "a

21  well-groomed appearance, pleasant and cooperative attitude, and good eye contact[,]" and that,

22  "[w]hile she appeared to have depressed mood and restricted range of affect, she had

REPORT AND RECOMMENDATION
PAGE -18

01  psychomotor activity within normal limits, speech and language that was normal in rate and

02  rhythm, and thought process that was logical and connected." (*Id*. (citing AR 258-59).)

03  Testing showed intact immediate, recent, and remote memory, and the clinician found no

04  impairments noted in terms of cognitive functioning. (*Id*. (citing AR 259-60).) The ALJ also

05  described a February 2012 record in which plaintiff had normal speech, casual grooming, and

06  normal psychomotor activity, and, despite complaints of severe anxiety, had good eye contact,

07  logical thought process, and appropriate thought content. (*Id*. (citing AR 266).) She

08  described plaintiff's report, one month later, that she was "'doing really well on Methadone'."

09  (*Id*.) The ALJ, as such, properly considered evidence of plaintiff's minimal treatment and

10  failure to comply with prescribed treatment.

11  C.    <u>Activities</u>

12      An ALJ properly considers evidence that a plaintiff's activities contradict the degree of

13  limitation alleged. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In this case, the ALJ

14  found plaintiff's range of daily functioning to indicate an individual "who is more active than

15  one would expect based on the alleged severity of mental symptoms." (AR 19.) As described

16  above, the ALJ pointed to reports and evidence of no problems with personal care; ability to

17  prepare meals and perform household chores, including cleaning, laundry, and feeding cats;

18  that she lives with and goes shopping with a friend, goes to the library twice weekly, goes

19  outside her home three to four times daily, and uses public transportation; that she alleged

20  feeling "'awkward around people'" but did not have any problems getting along with family,

21  friends, neighbors, or others; she attended appointments at a methadone clinic and classes,

22  performing well academically when she was able to attend; manages her own finances; reads,

01  watches television, and uses the computer at the library; and takes daily walks lasting forty to

02  forty-five minutes.   (*Id*.)

03          The ALJ found "such a wide range of activities" inconsistent with plaintiff's allegations

04  of debilitating anxiety and difficulty with concentration, and concluded a thorough review of

05  the evidence shows she is able to function at a higher level than alleged, and that "decreased

06  functioning is more a matter of motivation than capacity."   (*Id*.)   With respect to the latter

07  statement, the ALJ pointed to documents in the record wherein plaintiff reported "she stopped

08  going to Alcoholics Anonymous meetings due to 'laziness'", and stated: "'Seems I should do

09  more . . . , but I'm so lazy'."   (AR 19 (citing AR 233, 274).)   Plaintiff points to evidence as

10  reflecting her inability to consistently or successfully engage in activities identified by the ALJ,

11  and maintains the statements regarding her "laziness" reflect depression markedly impacting

12  her motivation.   However, the ALJ here reasonably considered and interpreted the evidence of

13  plaintiff's activities as detracting from the credibility of her testimony.   *See Molina v. Astrue*,

14  674 F.3d 1104, 1112-13 (9th Cir. 2012) ("Even where . . .   activities suggest some difficulty

15  functioning, they may be grounds for discrediting the claimant's testimony to the extent that

16  they contradict claims of a totally debilitating impairment.")

17  D.       Other Factors

18          The ALJ also found other factors to raise additional credibility concerns:

19          The claimant has a history of opioid dependence, in remission, and felony
           convictions stemming from an episode in which she wrote her own prescriptions
20         for controlled substances.   She reported that she was terminated from her prior
           work as a certified nursing assistant as a result of her felony convictions.   In
21         fact, she reported that she "would like to work, but is 'scared . . . about applying
           for work' due to her criminal [history]'".   Such evidence casts doubt on the
22         veracity of the allegations of debilitating symptoms and raises concerns about

REPORT AND RECOMMENDATION
PAGE -20

01      the motivation behind such alleged symptoms.  I also note based upon her
testimony that the claimant was achieving A grades during a period of

02      compliance with methadone treatment, and that her withdrawal from school is as
plausibly attributable to non-compliance as to any other explanation.

03      Nonetheless, the [RFC] outlined above accounts for the waxing and waning of
her symptoms, which seem to be exacerbated by her noncompliance with

04      methadone treatment.

05  (AR 19-20, citations to record omitted.)

06         Plaintiff provides some context regarding her drug addiction and felony conviction (*see*

07  Dkt. 22 at 18-19), but fails to support the contention that the ALJ improperly considered these

08  factors.   The ALJ may use "ordinary techniques of credibility evaluation, such as the

09  claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and

10  other testimony by the claimant that appears less than candid[.]"   *Smolen v. Chater*, 80 F.3d

11  1273, 1284 (9th Cir. 1996).   An ALJ is also "entitled to draw inferences logically flowing from

12  the evidence."   *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

13         In this case, the ALJ reasonably considered plaintiff's conviction of a crime involving

14  dishonesty as an additional reason for finding her not credible.   *See, e.g.*, *Albidrez v. Astrue*,

15  504 F.Supp.2d 814, 822 (C.D. Cal. 2007) (finding consideration of crimes involving moral

16  turpitude, such as showing a false ID to a peace officer, as well as violent crime of attempted

17  robbery, properly considered as basis for adverse credibility determination).   Plaintiff further

18  identifies no error in the ALJ's consideration of evidence raising concerns about her motivation

19  and the impact of her failure to comply with her methadone treatment.   *See Osenbrock v. Apfel*,

20  240 F.3d 1157, 1165-67 (9th Cir. 2001) (finding an ALJ properly discounted a claimant's

21  testimony due to evidence of self-limitation and lack of motivation), and *Tommasetti*, 533 F.3d

22  at 1039 (failure to seek or follow prescribed course of treatment properly considered).

REPORT AND RECOMMENDATION
PAGE -21

01      The ALJ, in sum, provided a number of clear and convincing reasons for finding

02 plaintiff not fully credible.   Her decision has the support of substantial evidence.

03                                 Steps Four and Five

04      Plaintiff avers errors at steps four and five given the errors in the consideration of the

05 medical opinion evidence and her credibility.   This mere restating of plaintiff's arguments

06 does not suffice to demonstrate error.   *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

07 1175-76 (9th Cir. 2008).

08                                   CONCLUSION

09      For the reasons set forth above, this matter should be AFFIRMED.

10      DATED this 3rd day of June, 2014.

11

12                                              _____

13                                              Mary Alice Theiler
                                                Chief United States Magistrate Judge

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -22